IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LONNIE NORTON,<br><br>                                    Plaintiff,<br><br>v.<br><br>[UFN] COLES, [UFN] ALRED, [UFN]<br>LEMMON, RILEY DUNCAN,<br>TIMOTHY DENNIS, MARYANN<br>REDING, DOES 1-10,<br><br>                                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 4:20-cv-32-DN<br><br>District Judge David Nuffer |

Plaintiff Lonnie Norton's Verified Amended Complaint ("VAC") alleges that Defendants violated his federal rights by denying him access to adequate medical care in violation of the Eighth Amendment (Claim One), denying him the right to grieve prison conditions in violation of Article 4 of the United States Constitution (Claim Two), failing to protect him from assaults by other inmates in violation of the Eighth Amendment (Claim Three) and denial of due process in a prison disciplinary hearing in violation of the Fourteenth Amendment (Claim Four).

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust any of his claims as required by section 1997 of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §1997(e)(a)(2025). Plaintiff's Reply to Plaintiff's Opposition to the Motion for Summary Judgment also introduces a motion to dismiss Plaintiff's first cause of action because it was filed after the statute of limitations had expired.

Having considered the parties' arguments and the evidence presented, the court finds that Defendants are not entitled to summary judgment as a matter of law. Defendants' Motion is therefore DENIED in its entirety.

# I.     THE STATUTE OF LIMITATIONS

Defendants raise the defense that Plaintiff's first claim is time barred by the statute of limitations. (ECF No. 76, at 15-17.) Plaintiff has not had an opportunity to respond to the statute of limitations argument because raised it in their Reply, more than four years after Plaintiff asserted the claim. Nevertheless, a sur-reply is unnecessary. Defendants waived the affirmative defense of the statute of limitations by failing to advance it in their responsive pleading. *Novosteel Sa v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (holding issues raised for the first time in a reply brief are deemed waived).

Defendants argue that the statute of limitations creates a jurisdictional bar. (ECF No. 76, at 2, n.1.). Defendants cite *Alvarez v. Sandridge*, 149 Fed. Appx. 822, 823-24 (10th Cir. 2005) (unpublished) [1] for the proposition that "[a] jurisdictional bar arises on constitutional claims when the statute of limitations period has passed." *Alvarez* does not support Plaintiff's contention. In *Alvarez* the Tenth Circuit sustained dismissal of claims pursuant to rules 12(b)(1) and 12(b)(6). *Alvarez*, 149 F. App'x at 823. The court separately noted that to the extent a jurisdictional bar existed, it arose because of the plaintiff's failure to comply with the procedural requirements of the Colorado Governmental Immunity Act. *Id*. Defendants offer no authority for the proposition that the statute of limitations is a jurisdictional bar to Plaintiff's first cause of action.

The statute of limitations is an affirmative defense that typically must be preserved in the first responsive pleading. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations.");

---

[1] The Tenth Circuit noted that its order and judgment in *Alverez* was not binding precedent and that the "court generally disfavors citation to orders and judgments." *Alvarez v. Sandridge*, 149 F. App'x at 823 n.*.

*Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987) ("limitations defense is generally waived unless it is raised in the defendant's responsive pleading.")

Defendants' affirmative defense is untimely. Defendants' Answers to the VAC, filed more than two years ago, neglected to assert the statute of limitations. *See* ECF Nos. 24-29. Defendants offer no analysis of the rule that a statute of limitations defense is generally waived unless it is raised in the responsive pleading. *See Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d at 973.

Defendants contend that they reserved "the right to assert other affirmative defenses as they become known." *See, e.g.*, ECF No. 24, at 12. Defendants' Motion for Summary Judgment also lacks discussion of the statute of limitations. (ECF No. 43.) Defendants now argue that "As counsel has reviewed all facts from the Complaint, Martinez Report [filed December 27, 2022], and Opposition to the Motion for Summary Judgment [filed August 27, 2024], the statute of limitation argument became apparent." (ECF No. 76, at 1, n.1.) Defendants provide no explanation why the statute of limitations defense wasn't apparent sooner. The VAC includes the dates relevant to the accrual of Plaintiff's cause of action. Plaintiff briefly tolled the statute of limitations by filing a similar case on December 28, 2019. Reply, (ECF No. 76, at 17 n.13) (citing Civil Docket 4:18-cv-00095). That action was voluntarily dismissed on January 25, 2019, before Defendants were served. The tolling period was too short to render this action timely.

Defendants waived the statute of limitations by failing to timely assert it. Defendants could have, but did not, assert the statute of limitations defense in their Answer, filed more than four years ago. Accordingly, Defendants' motion to dismiss Claim One pursuant to the statute of limitations is DENIED.

## II.    GRIEVANCES

Defendants move for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies for all of his claims.

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). The court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the initial burden to show "an absence of evidence to support an essential element of the non-movant's case." *Johnson v City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). If the movant satisfies this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. The non-movant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

"A verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in [Federal Rule of Civil Procedure] 56(e)." *Lynn v.*

*Willnauer*, No. 23-3111, 2024 U.S. App. LEXIS 31154, at *7 (10th Cir. Dec. 9, 2024) (quoting

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (alterations in original));

*Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not

rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified

complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the

standards for affidavits set out in Rule 56(e)."). The opposing party's evidence "must be based on

more than mere speculation, conjecture, or surmise." *Rice v. United States*, 166 F.3d 1088, 1092

(10th Cir. 1999).

**B. Exhaustion of Administrative Remedies**

"No action shall be brought with respect to prison conditions under section 1979 of the

Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted." 42 U.S.C.S. § 1997e (2025). The PLRA requires inmates to comply

with all prison grievance procedures including "deadlines and other critical procedural rules."

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

"The level of detail necessary in a grievance to comply with the grievance procedures

will vary from system to system and claim to claim, but it is the prison requirements, and not the

PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218

(2007). A grievance which supplies the information requested by prison officials "satisfies

§ 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough

information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*,

461 F.3d 1269, 1285 (10th Cir. 2006). In *Kikumura*, the Tenth Circuit rejected the proposition

that a grievance must identify all future defendants even if the grievance policy is ambiguous

about the requirement:

> The Supreme Court has cautioned that "the creation of an additional procedural technicality . . . [is] particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love v. Pullman Co*., 404 U.S. 522, 526-27, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). Not only do inmates typically file their grievances pro se, but [federal] BOP procedures allow prisoners just twenty days from the date of their injury to file a grievance; they are allowed less than a page and a half to write out a complaint; and, because they are incarcerated, the inmates often cannot investigate their own claims to identify the alleged wrongdoers. 28 C.F.R. §§ 542.14(a) & (c)(3); Am. Compl. Ex. A-2; *Brown v. Sikes*, 212 F.3d 1205, 1209 n.4 (11th Cir. 2000) (noting that "[a]ppellate courts have acknowledged the difficulties faced by a prisoner in identifying alleged wrongdoers before filing a complaint."). Additionally, the BOP administrative remedy program does not provide inmates a procedural mechanism for amending their grievances to identify additional defendants or provide new information about their claims, and federal regulations prohibit inmates from raising new issues in their administrative appeals. 28 C.F.R. § 542.15(b)(2). Given this procedural context, we do not find it so "apparent" that inmates must be required to specifically identify the wrongdoers in their initial grievance.

*Kikumura v. Osagie*, 461 F.3d at 1283-84.

The Supreme Court has stressed that it "will not read futility or other exceptions into statutory

exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S.

731, 741 n.6 (2001) (holding that Congress has provided in § 1997e that an inmate must exhaust

irrespective of the forms of relief sought or the relief available through administrative remedies.)

A "plaintiff with an objectively reasonable fear of retaliation from prison officials may

show that administrative remedies were unavailable to him and thereby be excused from

exhausting such remedies. *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir. 2011). The Tenth

Circuit has held that an inmate alleging unavailability of administrative remedies because of

intimidation must make two showings to overcome a failure-to-exhaust defense. First, the inmate

must show that he was subjectively actually deterred from completing the grievances. Id. at 1254. The second element is whether, in context, the retaliatory acts were objectively severe enough to deter a reasonable inmate. *Id.*

## C. Utah Grievance Policy

UDOC's grievance policy "provides inmates with the means to communicate their concerns and to resolve inequities and problems." UDOC Grievance Policy, FD02/01.03 (ECF No. 33-10, at 3). "In general, all inmate complaints are grievable except complaints against decisions and procedures of the Board of Pardons and Parole, disciplinary decisions, classification decisions, [Government Records Access and Management Act] decisions and issues not under the jurisdiction of [Division of Institutional Operations]." FD02/02.04 B, *id.* at 5-6. "Inmates with complaints regarding disciplinary decisions shall be referred to the designated appeals process." FD02/02.04 B2. *Id.* Under the grievance policy, an inmate has seven working days from the date of a grievable incident, or from the date that the inmate knew or should have known about a grievable incident to file a level one grievance. FD02/03.01 A, *id.* at 12. "The inmate, [sic] has the burden to articulate all relevant facts and information in the grievance." FD02/02.06 A4, *id.* at 6. The level one grievance form (GF-1 revised October 23, 2013) provides six lines to respond to the following prompt

> Section 1 – Informal Action Specific Nature of Grievance (What happened? When did it happen, date and place? Who witnessed the incident? How were you damaged or otherwise injured by the incident or policy etc.? Please send any evidence (witness statements, inventory sheet, commissary receipt, property receipt, or any other evidence you have to substantiate your claim of damage or injury):

Grievance No. 990892555 (ECF No. 34-10, at 3) (filed under seal). Inmates requiring additional space may attach supplementary pages. FD02/04.03 A, ECF No. 33-10, at 15.

The facility is expected to investigate and respond within twenty-one working days from the time they receive a level one grievance. FD02/03.01, *id*. at 12. "The grievance should not be sent back to the inmate, unless it is not possible to process the grievance without additional information." FD02/02.06 A4, *id*. at 6-7. "Each decision maker is required to provide the inmate with one copy of a written response which states the reasons for the decision and the procedure to be followed by the inmate to obtain a review of the decision." FD02/02.06 E1 *id*. at 9. "Retaliation is prohibited under the grievance procedures, and complaints of either formal or informal reprisals are separate grievable issues." FD02/02.06 I1, *id*. at 10-11.

If an inmate is dissatisfied with a grievance response, the grievance policy provides for up to two levels of appeal. The inmate has five working days from the date the level one response is received to submit a level two grievance. FD02/03.01 C, *id*. at 12. An inmate has five working days from the date the level two response is received to file a level three grievance. FD02/03.02 B, *id*. at 13. There is no further administrative remedy beyond a level three grievance. FD02/03.03 B, *id*. at 14.

## D. Claim One

### 1. Plaintiff adequately grieved Defendant Dennis

Defendants argue that Plaintiff failed to exhaust his administrative remedies for Claim One because 1) he failed to identify Defendant Dennis in the relevant grievances and 2) because the grievance complains of failure to provide a specific medical treatment rather than grieving a violation of the Eighth amendment. (ECF No. 43, at 23-25.) A grievance which supplies the information requested by prison officials "satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d at 1285.

Defendants argue that the grievance policy required Plaintiff "to identify who grieved them, what they did, when they did it, where it was done and how it was done." Defendants' argument fails because it overstates the policy requirements. The grievance form does not explicitly require inmates to "identify who grieved them," it asks inmates to state "who witnessed the incident." The prompt asks

> What happened? When did it happen, date and place? Who witnessed the incident? How were you damaged or otherwise injured by the incident or policy etc.? Please send any evidence (witness statements, inventory sheet, commissary receipt, property receipt or any other evidence you have to substantiate your claim of damage or injury."

(ECF No. 34-10, at 3.) Although this language is susceptible to the interpretation that "who witnessed the incident" includes any party who participated, the interpretation that "witness" means only non-parties to the incident is also reasonable. The latter interpretation is especially reasonable in the context of the prompt's instruction to include "witness statements." A requirement that inmates to obtain witness statements from parties against whom they are grieving within the seven-day filing period would allow potential subjects of grievances to stymie grievances by declining to cooperate. Nor would such a requirement substantially enhance the prison's ability to investigate grievances against prison employees.

Further, this court has previously noted that (a former version of) the grievance policy admonished prison officials to process grievances unless it is impossible to process the grievance without additional information. *See Williams v. Blood*, Case No. 2:13-cv-601-RJS (D. Utah Sep. 27, 2016.) The current policy retains a similar admonition. FD02/02.06 A4 (ECF No. 33-10 at 6-7.) ("The grievance should not be sent back to the inmate, unless it is not possible to process the grievance without additional information.") Defendants have not argued that Plaintiff's failure to identify Dennis by name prevented prison officials from processing the grievance and evidence

suggests otherwise. Plaintiff was required to supply the date and circumstances of his medical grievance. Plaintiff's medical records attached to the grievance responses and Defendant Dennis's deposition confirm that Dennis was the subject of Plaintiff's grievance. *See* ECF No. 72-7, at 7-8; Dennis Deposition ¶¶ 6-11 (ECF No. 34-15, at 3-4)(filed under seal).

In light of the textual ambiguity, the fact that grievances are typically filed by lay persons unassisted by counsel and the lack of evidence that Plaintiff's failure to identify Dennis by name prevented prison officials from effectively responding to Plaintiff's grievance, the court declines to impose more formalistic requirements than textually necessary. *See Kikumura v. Osagie*, 461 F.3d at 1283-84. Therefore, the court concludes that Plaintiff was not required to identify Dennis by name in his grievance to exhaust his administrative remedies.

## 2. Plaintiff adequately raised a constitutional issue

Defendants argue that Plaintiff's grievance No. 990892555 failed to exhaust his Eighth Amendment claims because the grievance merely requested a particular medical procedure rather than alleging that a health care provider violated his constitutional rights. (ECF No. 43, at 24-25.) Plaintiff's level one grievance complained that when he sought treatment for a hernia, the medical provider told him that it was a serious medical issue which could eventually lead to death but that "they won't fix it until its critical and you're in severe pain." ECF No. 13-11, at 4. The grievance specifically alleged that Plaintiff's "pleas were met with Deliberate Indifference." Deliberate indifference to serious medical needs is an element of an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."). It is unlikely that Plaintiff used this term of art inadvertently. The court concludes that Plaintiff's level

one grievance presented a constitutional claim of deliberate indifference to serious medical needs with sufficient clarity to allow prison officials to investigate the issue.

Nevertheless, the prison official who responded to Plaintiff's level one grievance either failed to appreciate or declined to address Plaintiff's constitutional claim. The level one response focused exclusively on Plaintiff's health care:

> The provider is the only one licensed to provide treatments. You do not get to choose the treatments or items that you would like to receive. The provider makes treatment decisions based on their individual clinical knowledge and your specific condition.

ECF No. 13-11, at 4. The response informed Plaintiff that "If this explanation does not satisfy tour issue, you have the right to appeal this decision through a level 2 grievance per FDR 02/03/02." *Id*.

Plaintiff was dissatisfied with the response but failed to clarify his constitutional issue in his level 2 grievance. The level 2 grievance form invites inmates to

> Explain exactly why the Level 1 response to your grievance was incorrect, unacceptable, unresponsive or unsatisfactory (New issues will not be considered at Level 2 and not getting the remedy you requested or the requirements of Prisoner's Litigation Reform Act are not acceptable appeal reasons):

*Id*. at 5.    Plaintiff's level two grievance said

> I am in constant pain, even though I am wearing the hernia belt prescribed. It hurts to sit, lay, stand, run, urinate, and deficate [sic]. It is significantly affecting my daily activities. The hernia belt is not sufficiently returning my health to normal.

*Id*. Plaintiff's level two grievance provided the opportunity to highlight the constitutional element of his level one grievance. Plaintiff could have said that the level one response was unacceptable because it neglected to address the alleged deliberate indifference. Plaintiff's level two grievance did not alert prison officials to their failure to address the deliberate indifference he asserted in his

level one grievance. Perhaps unsurprisingly, the official responding to Plaintiff's level two grievance also focused only on Plaintiff's request for additional medical treatment.

However, Plaintiff's level three grievance complicates the analysis. The level three grievance form instructs inmates to "List the reasons why the prior Level II (Formal) administrative grievance decision is unacceptable." ECF No. 34-10 at 9. Plaintiff responded only that "The response was unacceptable. I reassert everything I said in level I and level II." *Id*. Plaintiff did not offer any reason why the previous response was unacceptable as he was instructed to do by the grievance form.

Despite Plaintiff's lackluster explanation for the appeal, the responding official understood and addressed Plaintiff's constitutional claim for the first time in the process. The level three response articulates the elements of a constitutional deliberate indifference claim and concludes that Plaintiff had not met them:

> For a case of deliberate indifference to exist, the Court requires the presence of three elements. A correctional and/or medical official must have:
>
> 1. Known the facts revealing that an inmate faced a substantial risk of serious harm.
> 2. Actually deduced from these facts that the inmate was at significant risk of being seriously harmed.
> 3. Failed to take reasonable steps to prevent the harm from occurring.
>
> Even if an official was actually aware of a significant risk of serious harm to an inmate, the official does not act with deliberate indifference if the official acted reasonably to protect the inmate from harm. See *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In a review of your medical record, it is clear that this is not the case here.

*Id*. at 10. The level three response concludes "If you are dissatisfied with this response and wish to take further action, this level three grievance response will serve as evidence you have

exhausted the administrative remedy process. Your only recourse is to seek a judicial remedy."
*Id*.

Defendants offer no precedent directly on point. Defendants have not identified a case involving a prisoner who was found not to have exhausted his administrative remedies even though he raised a constitutional issue in his initial grievance, completed the full course of administrative remedies and received a clear response to the merits of his constitutional claim in the final round of the administrative review process. Cases cited by defendants for the proposition that "proper exhaustion requires compliance with all prison grievance procedures including 'deadlines and other critical procedural rules'" are distinguishable. For example, in both *Thomas v. Hormel*, No. 20-6047, 2021 WL 567291, *2 (10th Cir. Feb. 16, 2021) and *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) the Tenth Circuit held that inmates had failed to properly exhaust their administrative remedies because they did not complete the grievance process. Those inmates submitted procedurally defective grievances and declined the invitation to refile amended versions. Those cases are not analogous to the case at bar.

In *Ross v. County of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004) the Tenth Circuit held that prison officials waived a procedural defect by responding to a grievance on the merits. *Id*. at 1186 (overruled on other grounds in *Jones v. Bock*, 549 U.S. 199, 206 (2007)). *Ross v. County of Bernalillo* involved a different procedural defect than is at issue here, an untimely grievance. Nevertheless, the principle that prison officials may waive procedural defects by responding to the merits of a grievance is applicable here.

One purpose of the grievance process is to afford prison officials a fair opportunity to review and redress inmates' concerns before they seek recourse in the courts. *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 2385 (2006) ("Exhaustion gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." (cleaned up)). Prison officials responded directly to the merits of Plaintiff's constitutional claim in the level three response.

The facts, viewed in the light most favorable to Plaintiff, suggest that prison officials had a fair opportunity to respond to his Eighth Amendment claim. Regardless of how inarticulately Plaintiff presented the issues in the intervening grievances, it was apparently sufficient to afford prison officials the opportunity to respond. Without clear precedent supporting dismissal of the claim for failure to exhaust administrative remedies in these circumstances, this court declines to do so.

Defendants' motion for summary judgment for Claim One for failure to exhaust administrative remedies is DENIED

**3. Plaintiff has raised genuine disputes of material fact whether he exhausted Claims Two, Three, and Four.**

Defendants move for summary judgment of Plaintiff's Claims Two, Three and Four because Plaintiff did not file any relevant grievances. Plaintiff argues that the grievance process was unavailable to him because of Defendants retaliation against him. Plaintiff claims that "(1) the Defendants' retaliatory conduce did in fact deter him from lodging formal grievances against Cowles[2] and other Officers; and (2) Norton was an inmate of ordinary firmness and fortitude when he was deterred from lodging his grievance[s]." ECF No. 72, at 9-10. Here again, Plaintiff, though a lay person, invoked language specific to the relevant legal standard. In this section, Plaintiff must show that he was subjectively deterred from filing the grievance, and second that

---

[2] Defendant Cowles is identified as "Coles" in the caption. Because he identified himself as "Cowles" in his deposition, the court refers to him accordingly.

retaliatory acts were objectively sufficient to deter an inmate of ordinary firmness. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

Plaintiff's Claims Two, Three and Four are related to Plaintiff's claim that members of the Central Utah Correction Facility staff orchestrated an assault on Plaintiff by another inmate in retaliation for Plaintiff's complaints that he was unfairly terminated from his prison job. Plaintiff alleges that he was terminated because of retaliation but has not filed any claims specific to that incident. Claim Two alleges that Defendants Cowles, Allred,[3] Lemmon and Duncan violated Plaintiff's constitutional rights by inciting the fight in retaliation for Plaintiff's efforts to pursue a grievance against Cowles. Claim Three alleges that Cowles, Allred, Lemmon and Duncan subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment by inciting an inmate to assault Plaintiff. Claim Four alleges that Defendants Reding and Duncan violated Plaintiff's Fourteenth Amendment rights by denying Plaintiff due process in a prison disciplinary hearing for the fight.

### a. Factual Background for Claims 2 and 3

The primary events relevant to Claims 2, 3, and 4 occurred between February 6 and February 10, 2018. However, Plaintiff alleges that those events were motivated by a grudge Cowles held against Plaintiff stemming from his position as a section representative in November 2017.

In November 2017, Plaintiff was employed as a section representative in Defendant Cowles' section. Plaintiff's responsibilities included acting as an intermediary between inmates, the corrections officers, the Captain and the Offender Management Team ("OMR"). Cowles Aff. ¶8 (ECF No. 34-16, at 3). Sometime in November, two inmates in Plaintiff's section

---

[3] Defendant Allred is identified as "Alred" in the VAC.

engaged in a fight. *Id*. ¶ 10. Plaintiff was not involved in the fight. VAC (ECF No. 13, at 5) [4].

After the incident, Cowles contacted Plaintiff as section representative to discuss the incident and

how it could have been presented. Cowles Aff. ¶13 (ECF No. 34-16, at 4). According to

Plaintiff, Defendant Cowles informed him that he, (Cowles) had been reprimanded by Captain

Allred because of the fight. VAC ¶40 (ECF No. 13, at 6). Cowles allegedly told Plaintiff that he

blamed the reprimand on Plaintiff for failing to prevent the fight. *Id*. For his part, Cowles denies

that he was ever reprimanded by Allred, or any other supervisor, while he was employed at the

Central Utah Correctional Facility. Cowles Aff. ¶25 (ECF 34-16, at 6)(filed under seal).

Plaintiff alleges that Cowles told him that he was firing Plaintiff from his position as

section representative for failing to prevent the fight. VAC ¶40 (ECF No. 13, at 6). Plaintiff

claims that Cowles relented, but remained "vengeful," after Plaintiff reminded him that

"1) Plaintiff tried to prevent the fight; 2) Plaintiff had no authority over other inmates;

3) Plaintiff had not been instructed on taking any particular action when fights occurred; [and]

4) managing prisoner [sic] is the guards' duty." *Id*. at ¶41. According to Plaintiff, Cowles allowed

him to keep his position, but told him that he would exact revenge by creating a situation in

which he could punish Plaintiff by mis-using his authority as a prison guard. *Id*. at ¶42.

Plaintiff alleges that in January, Cowles carried out his threat to create a pretext to punish

Plaintiff. According to Plaintiff, Cowles oversaw the transfer of an inmate who had been

"running a store" (distributing contraband) inside the section. VAC ¶44 (ECF No. 13, at 6).

Plaintiff speculates that Cowles allowed the inmate to transfer his contraband to another inmate

---

[4] "A verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in [Federal Rule of Civil Procedure] 56(e)." *Lynn v. Willnauer*, No. 23-3111, 2024 U.S. App. LEXIS 31154, at *7 (10th Cir. Dec. 9, 2024) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (alterations in original)); Conaway v. Smith, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).").

in order to create a pretext to retaliate against Cowles. *Id.* at ¶55. Plaintiff offers no evidence to corroborate this speculative allegation.

On January 30, prison guards conducted a search of all cells in the unit. Cowles Aff. At ¶19. Nine inmates, including Plaintiff, were issued reprimands ("C-Notes") for possession of contraband. cNotes 1/30/2018 (ECF 34-7, at 2).  Plaintiff claims that after the seizures, Cowles summoned twenty inmates to a public area called the "horseshoe" where they could be seen by other inmates and berated them for "borrowing snacks from an inmate 'store.'" VAC ¶46 (ECF No. 13, at 6). According to Plaintiff, Cowles "ritualistically" mocked and lectured the inmates as he ordered them to clean up pages from the "store" logbook that he ripped out and threw into the air. *Id*.

After Cowles had humiliated the other inmates, he singled out Plaintiff and berated him even more harshly. *Id*. at ¶48. Plaintiff alleges that Cowles publicly "chew[ed] out plaintiff for not 'snitching' on other inmates, an activity which would not only be dangerous, but was not part of plaintiff's job." *Id*. At the end of the lecture, Cowles fired plaintiff from his role as section representative. *Id*. at ¶49. When Plaintiff asked Cowles why he had been singled out for more stringent punishment, Cowles told him "I told you I'd find a reason to fire you." *Id*. at ¶50. Plaintiff describes the incident as a "grievable issue," but Plaintiff did not file a formal grievance. *See id*. at ¶49.

Cowles' offers a more sedate description of the event. Cowles testified that after the search revealed multiple inmates in possession of contraband, inmates were brought to the "horseshoe" for questioning and issued reprimands. Cowles testified that he terminated Plaintiff as section representative because he was found to be in possession of contraband. Cowles Aff. (ECF No. 34-16, at ¶¶17-21). When Plaintiff asked why he was subjected to more severe

punishments Cowles told him "Section reps are held at a higher standard and should set the example." *Id*. at ¶21.

Plaintiff's efforts to grieve his firing are the context for Claims Two and Three. According to Plaintiff, he initiated an informal grievance the next day by speaking to two officers about the incident. The officers told him that Cowles "had exceeded his authority by firing plaintiff and [Cowles] behavior was inappropriate," but deferred to Sgt. Lemmon's crew to remedy the situation." VAC ¶52 (ECF No. 13, at 7).

On February 3, Plaintiff contacted Defendants Duncan and Lemmon to discuss the incident. *Id*. at ¶53. Plaintiff alleges that Duncan told Plaintiff that Lemmon wouldn't provide a remedy because "guards won't question other guards' actions (professional courtesy)." *Id*. Duncan encouraged Plaintiff to speak to Defendant Allred about the incident. Plaintiff made an appointment to speak with Allred on February 6. *Id*. at ¶54.

Plaintiff related the incident to Allred including "the 20 inmates, the littering, pacing, head wagging, 'C Notes' and the firing (unequal treatment)." *Id*. at ¶55. According to Plaintiff he "also related [Cowles'] spreading the gay sex rumor and the racist, anti-Mexican rumor[5], as well as [Cowles'] creating the store situation in the first place so that [Cowles] could later 'bust' the store in order to 'get even' with Plaintiff." *Id*. According to Plaintiff, Allred told him that "he didn't care what [Cowles] had done and he wasn't going to do anything about it. [Allred] said he wasn't interested in how the guards do their jobs and said 'our job is to make sure you criminals are miserable.'" *Id*. at ¶56. Plaintiff informed Allred that he intended to file a written grievance against Cowles but wanted to give Allred a chance to redress the issue first. According to Plaintiff, Allred responded

---

[5] Plaintiff later claims that Defendant Cowles spread these rumors with the intent to place Plaintiff in danger from other inmates, but he fails to provide any details about when the rumors were allegedly spread, or to whom.

> if you file a grievance on [Cowles,] I will fire everyone in your section that has a job and will tell them I'm firing them because you complained about losing your job. This wouldn't make you too popular and might even get you beat up. Don't file a grievance on [Cowles] or you'll regret it.

*Id*. at ¶58. According to Plaintiff, Allred suggested that Plaintiff talk to the officers on the OMR team to try to get reinstated as section representative instead of filing a formal grievance. Plaintiff notes that the officers on the OMR team were the same officers he had already approached.

Plaintiff made an appointment to meet with OMR. On February 7, Plaintiff met with Defendants Duncan and Lemmon to solicit advice for the meeting. According to Plaintiff, they told him that "if [Plaintiff] continues to pursue the issue of [Cowles's] misconduct, they will fire all inmate workers in plaintiff's housing unit and tell these inmates that they are being fired because plaintiff made them mad by grieving [Cowles]." *Id*. at ¶61. Shortly after that conversation, Plaintiff "saw and heard Duncan and Lemmon tell inmates Cooper, Bradley, and McCamey, among others that they were going to be fired from their jobs because [Plaintiff] wouldn't stop complaining about [Cowles] firing him." *Id*. at ¶62. In response, the inmates told Duncan and Lemmon that they would "shut [Plaintiff] up permanently." *Id*.

Later that day, Plaintiff heard Defendant Allred "tell inmates Cooper Bradley and Watts that because [Plaintiff] keeps bitching about losing his job I'm going to fire everyone in your section to teach [Plaintiff] what happens when you grieve guards in my unit." *Id*. at ¶63.

On February 9, Plaintiff heard Cowles tell a group of inmates, including Cooper, that "[Plaintiff] is a fucking snitch. [Plaintiff] snitched on a bunch of people in here and he filed a grievance on me for firing him. Everyone in this section is going to lose their jobs because of [Plaintiff's] grievance. I'd kick his ass if I were you." *Id*. at ¶65.

Inmate McCamey submitted an affidavit attesting that on February 9, 2019, Cowles

> . . . . told me that [Plaintiff] was a snitch and that [Plaintiff] had written a grievance on Coles.
> Coles further said that Plaintiff had snitched on inmates.
> Coles said that as a result of the grievance [Plaintiff] had written on Coles over Coles firing [Plaintiff] from [Plaintiff's] section job, everyone in the section, including myself would be fired in retalialiation [sic] for [Plaintiff's] grievance.

McCamey Aff. ¶¶2-4 (ECF No. 13-10, at 3).[6] McCamey contacted Plaintiff to warn him that "being labelled a snitch gets you beat up." *Id*. at ¶6. Plaintiff responded that he had not filed a grievance on Cowles, nor snitched on any inmates. VAC ¶69, (ECF No. 13, at 9).

Their conversation was interrupted by Cooper yelling "fuckin' snitch!" while aggressively approaching Plaintiff. *Id*. at ¶70; McCamey Aff. ¶7 (ECF No. 13-10, at 4). Plaintiff walked to Cooper to ask what was wrong. VAC ¶71. Cooper removed his glasses, balled his fists and stood within inches of Plaintiff. McCamey Aff ¶8; VAC ¶72. Cooper said "[Cowles] told us you're a snitch, Mother Fucker!" VAC ¶73.

Plaintiff "put his hands up and moved back." McCamey Aff. ¶10. Plaintiff told Cooper that Cowles had lied, but Cooper responded that "[Cowles] told me I'm going to lose my job because you fucked us off by filing a grievance on him!" *Id*. at ¶75. Cooper then repeatedly punched Plaintiff in the face and head. *Id*. at ¶76; McCamey Aff. ¶11; Watts Aff. at 5 (ECF No. 13-9, at 5). According to McCamey, Watts and Plaintiff, Plaintiff did not fight back. VAC ¶77; McCamey Aff. ¶11; Watts Aff. at 5.

Inmate Watts alerted guards by pushing the call button in his cell. Watts Aff. at 6; VAC ¶80. Officer Duncan testified that when he was alerted by the inmate he "looked up and saw two inmates fighting." Duncan Decl. 10 (ECF No. 34-19)(filed under seal). Officer Duncan

---

[6] The McCamey Affidavit does not mention the February 7th conversation with Duncan and Lemmon described in the VAC.

signaled for a lock down and ordered the inmates to return to their cells over the intercom. Watts Aff. at 6; VAC ¶82-83; Duncan Decl. ¶10. Plaintiff and Cooper disengaged. VAC ¶83; Duncan Decl. ¶18. Duncan reviewed the surveillance video and identified Plaintiff as one of the inmates involved in the fight. Duncan Decl. ¶11. Plaintiff sustained a cut requiring sutures over his left eye, a broken nose, dental problems and blurry vision. VAC ¶86. According to Plaintiff, Cooper was uninjured. VAC ¶83.

Officer Duncan filed an incident report stating that "While working my assigned post as Birch floor officer I noticed inmate Cooper and inmate Norton fighting .... Both inmates were actively fighting in the incident." Incident Report No. 334287 (ECF No. 34-3, at 5)(filed under seal). The incident report noted that camera footage was reviewed and no other inmates were involved. *Id.* Both Plaintiff and Cooper declined to participate in the investigation of the fight. *Id.* at 4-5. Plaintiff claims he declined to participate in the investigation because of fear of retaliation by Defendants and Cooper. VAC ¶85. Both inmates were disciplined for fighting. *Id.* at 6-7.

**b. Analysis**

Plaintiff did not grieve the allegations Claims 2 and 3. The Tenth Circuit has recognized that "an administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy.'" *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)). In order to show that the grievance was not "available," Plaintiff must show that he was subjectively deterred from grieving by Defendants' retaliatory threats or actions, and that the retaliation was sufficiently severe to deter a reasonable inmate of ordinary fortitude. Plaintiff has submitted admissible evidence that Defendants Cowles, Allred, Lemmon and

Duncan spread inflammatory rumors about Plaintiff with the intention of preventing Plaintiff from using the grievance process.

### i. Evidence suggests that Plaintiff was subjectively deterred from filing grievances

Defendants argue that Plaintiff cannot satisfy the subjective prong because he filed dozens of grievances between May 2015 and June 2022. Grievance List (ECF No. 34-9, at 2). According to Defendants, Plaintiff has filed 41 grievances at the prison, including multiple grievances against prison staff. Plaintiff has grieved retaliation for filing grievances (6/21/2021); staff mocking him (7/7/22); and being required to follow officer's orders to meet with the Captain (3/2/2017). Reply in Support of Motion for Summary Judgment, (ECF No. 76, at 23); Grievance List (ECF No. 34-9, at 2). Plaintiff also filed a grievance for a lack of hot water on March 12, 2018, approximately one month after the retaliation alleged in the VAC. Defendants argue that Plaintiff's extensive history of filing grievances demonstrates that he was not deterred from doing so.

However, Plaintiff's prolific history of filing grievances must be viewed in the light most favorable to Plaintiff. In that light, it can be argued that Plaintiff's demonstrated willingness and ability to engage with the grievance process, suggest that something must have deterred him from filing grievances in January and February 2018, when he was assaulted by Cooper. For the purpose of summary judgment, the evidence supports the inference that Plaintiff was subjectively deterred by the alleged retaliation.

**ii. Evidence suggests that the alleged retaliation by each Defendant was sufficiently serious to deter a reasonable inmate from filing grievances**

   a) **Cowles**

Plaintiff has submitted sufficient evidence to satisfy the objective component of the failure to grieve analysis. A plaintiff must show that the retaliation was sufficiently severe that it would deter a reasonable inmate of ordinary fortitude from grieving. Plaintiff's allegations that on February 7, he heard Cowles tell other inmates that they would be fired as a result of Plaintiff's grievance activity is corroborated by another inmate, McCamey. McCamey Aff. ¶¶2-4 (ECF No. 13-10, at 3). Both Plaintiff and McCamey attest that Cooper was one of the inmates Cowles threatened to fire in retaliation for Plaintiff's complaints. McCamey also corroborates Plaintiff's claim that Copper was yelling about Plaintiff being a snitch when he confronted Plaintiff on February 10. Plaintiff suffered a broken nose and a cut that required stitches over his left eye.

Cowles denies the allegation that he retaliated against Plaintiff, but for the purpose of summary judgment, plaintiff has raised a genuine dispute as to whether Cowles incited Cooper to attack Plaintiff in retaliation for Plaintiff's complaints that Cowles fired him from his position as section representative. Plaintiff has met the objective component of the failure to grieve analysis with regard to Cowles.

   b) **Allread, Duncan and Lemmon**

Plaintiff alleges that on February 6, Allred told Plaintiff "if you file a grievance on Cowles, I will fire everyone in your section that has a job and will tell them that I'm firing them because you complained about losing your job. This wouldn't't' make you too popular and might even get you beat up. Don't file a grievance on [Cowles] or you'll regret it." Plaintiff alleges that

on January 7, he heard Captain Allred tell Cooper and Watts that "because [Plaintiff] keeps bitching about losing his job I'm going to fire everyone in your section to teach [Plaintiff] what happens when you grieve guards in my unit."

Plaintiff alleges that on February 7, 2018, Officers Duncan and Lemmon told him that they would retaliate against him if he continued to pursue a grievance against Officer Cowles. Plaintiff claims that Duncan and Lemmon told him that they would fire other inmates and tell them that they had been fired in retaliation for Plaintiff's grievance against Cowles. Then, Plaintiff alleges that he heard Duncan and Lemmon telling a group of inmates that they were going to be fired because of Plaintiff's complaints about Cowles. Plaintiff alleges that Cooper was among the inmates Duncan and Lemmon

Plaintiff offers no corroboration for his allegations that Allred, Duncan and Lemmon threatened to retaliate against him. Nevertheless, because Plaintiff's statement alleges that he personally heard Defendants threaten retaliation and encourage others to assault him, Plaintiff's sworn allegations are "based on more than 'mere speculation, conjecture, or surmise.'" *See Thompson v. McCullar*, 2009 U.S. Dist. LEXIS 129767, at *6. The court deems the alleged acts of retaliation sufficiently severe to deter a reasonable inmate.

For the purpose of summary judgment, Plaintiff has established a genuine dispute of material fact as to whether Defendants Allred, Duncan and Lemmon retaliated against Plaintiff to prevent him from availing himself of the prison grievance process.

### c. Plaintiff exhausted his administrative remedies for Claim 4

The only basis for summary judgment Defendants assert against Claim 4 is that Plaintiff failed to exhaust his administrative remedies. Plaintiff's Claim Four alleges that Officer Duncan submitted false evidence claiming to have seen Plaintiff engaged in the fight, even though

Duncan was not in the room where the fight occurred. VAC ¶134. Plaintiff alleges that Officer Reding denied Plaintiff due process by refusing to allow him to "call witnesses, present evidence, listen to plaintiff's testimony, partiality, and finding of guilt with no evidence, insufficient disposition." VAC ¶138. Plaintiff alleges that Reding lacked authority to impose a fine without due process. *Id*. at ¶139. Plaintiff appealed his administrative decision but did not file a grievance.

Following the February 10 fight, Plaintiff was summoned to a disciplinary hearing. Plaintiff was given written notice of the charges and a summary of the procedural rules. Incident Report (ECF No. 34-3, at 7). Plaintiff's disciplinary hearing on March 6 found that there was "some evidence" to support his citation for "Fighting/Threats/Horseplay" based on the officer's report stating that he had seen Plaintiff actively fighting. *Id*. at 9. The hearing officer concluded that additional witnesses and evidence would be unnecessary. *Id*. at 10. Plaintiff was fined $70. *Id*. at 9.

Plaintiff appealed the decision, claiming that he had been denied due process, including the opportunity to present exculpatory evidence (witnesses and surveillance video which would have shown that he had not actively fought the other inmate), among other things. *Id*. at 10. Plaintiff also challenged the prison's authority to issue a fine and deduct it from his account. *Id*.

On May 4, the hearing office notified Plaintiff that his appeal was denied, including the reasons for the denial. *Id*. at 15-16. The notice of disciplinary findings explained that Plaintiff's administrative hearing had complied with relevant due process policies and procedures; the standard of evidence in a disciplinary hearing was "some evidence"; the hearing officer was justified in denying plaintiff the opportunity to call additional witnesses because there was "some evidence" that Plaintiff had been seen fighting; and the penalties imposed were not arbitrary,

capricious or unreasonably high. *Id*. The notice concludes "There is no further administrative review available. If you are dissatisfied with this response and wish to take further action, this response will serve as evidence that you have exhausted the administrative remedy process. Your only recourse is to seek a judicial remedy." *Id*.

The PLRA requires inmates to comply with administrative remedies provided by the prison. *See Jones v. Bock*, 549 U.S. at 218. According to prison policy, disciplinary hearings may not be the subject of a grievance policy. FD02/02.04 B (ECF No. 33-10, at 5-6). Inmates exhaust administrative remedies for disciplinary actions by appealing the decision. FD02/02.04 B2, *Id*. The denial of Plaintiff's appeal states that Plaintiff has exhausted his administrative remedies for that action. Plaintiff was therefore under no obligation to file a grievance to exhaust Claim 4. Defendant's motion for summary judgment for Claim 4 is DENIED.

### III.    CONCLUSION

Defendants have failed to establish that they are entitled to judgment as a matter of law on any of Plaintiff's claims. Defendants waived the statute of limitations by waiting nearly four years to challenge it. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff exhausted the administrative remedies that were available to him for each of his claim. Defendant's motion for summary judgment must therefore be DENIED.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is DENIED.


DATED this 27th day of May, 2025.

BY THE COURT

JUDGE DAVID NUFFER
United States District Court

26